**EXHIBIT "C"**

# NYS Department of State

## Division of Corporations

**Entity Information**

---

Selected Entity Name: ALLIEDBARTON SECURITY SERVICES LLC

Selected Entity Status Information

**Current Entity Name:** ALLIEDBARTON SECURITY SERVICES LLC
**Initial DOS Filing Date:** MAY 10, 2006
**County:** RENSSELAER
**Jurisdiction:** DELAWARE
**Entity Type:** FOREIGN LIMITED LIABILITY COMPANY
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

**Registered Agent**
C T CORPORATION SYSTEM
111 EIGHTH AVENUE
NEW YORK, NEW YORK, 10011

NOTE: New York State does not issue organizational identification numbers.

Search Results    New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

## SECURITY SERVICE AGREEMENT

This **AGREEMENT**, made this 24th day of June, 2005, by and between Allied Security LLC (hereinafter "Allied Security"), 3606 Horizon Drive, King of Prussia, Pennsylvania 19406, and Saint Peter's College (hereinafter "Client"), located at 2641 Kennedy Boulevard, Jersey City, New Jersey 07306, is for security officer and other services for Client's location at 2641 Kennedy Boulevard, Jersey City, New Jersey.

In consideration of the mutual covenants herein, Allied Security and Client agree as follows:

A.  **Scope of Services**

   1. Allied Security shall provide security officer and other services in the amount and for the times set forth in Addendum "A" attached hereto which is incorporated herein as if the same was set forth at length. Allied Security does not warrant or guarantee that the security services set forth in Addendum "A" constitute complete security at Client's location so as to prevent any loss or injury. Client agrees that Allied Security has not been engaged as a security consultant with respect to this location. Allied Security does agree to provide the services in a professional and diligent manner pursuant to the terms of this agreement

   2. From time to time, Client may request a change in the services designated in Addendum "A." Such requested changes, to be communicated in writing, will be effective only upon Allied Security's written approval which Allied Security will reasonably grant.

B.  **Personnel**

   1. Allied Security is responsible for the hiring, training and supervision of all security officers assigned to Client's location. Allied Security will provide to the Client a letter certifying that the required credit, criminal and background checks for each of Allied Security's personnel at Client's location has been completed. In addition the Client can at any time audit the files of any security officer assigned to Client's location. Should Client direct or supervise security officers or alter or change the direction or supervision given by Allied Security to the security officers at its location without Allied Security's consent, Client will be responsible for any damages, liabilities, claims or other consequences that may result.

   2. In addition to the services set forth in Addendum "A" attached hereto, and in addition to any general or routine training provided by Allied Security to its security officers, Allied Security shall provide each of its employees assigned to Client's location with on-site training designed specifically for the needs of Client and its location. Allied Security will advise Client in advance as to the nature of such training and when it shall occur. Client may advise Allied Security on the substance and form of this training.

3. Allied Security shall provide uniforms for all assigned personnel. Allied Security will maintain these uniforms in good condition at Allied Security's sole cost and expense. Allied Security's personnel will not carry weapons of any kind.

4. Security officers assigned to Client's location are employees of Allied Security, which is acting as an independent contractor. Allied Security will pay all appropriate compensation due and owing to its security officers and personnel, all employee contributions (i.e., pension, welfare, etc.), and all required payroll taxes and withholdings as levied by City, County, State and/or Federal authorities. Allied Security shall provide for all personnel administration of its employees assigned to Client's location. Allied Security expressly agrees that such security officers and personnel shall at no time be deemed employees of Client. Allied Security shall provide all required insurance for its personnel including (without limit) worker's compensation insurance.

5. Allied Security is entitled to assign personnel to Client's location in full compliance with applicable Federal, State and Local equal opportunity and civil rights law. Upon reasonable written notice, Client shall have the right to request that any of Allied Security's employees whom it finds to be unacceptable be removed from its location. Upon Client's request, Allied Security shall promptly remove such employee. However, in no event will such a request for removal by Client be made for reasons that would violate applicable law.

6. Client acknowledges that Allied Security has spent considerable time and expense in recruiting and training its employees. As such, Client agrees that it will not employ as a security officer or in any related capacity, directly or indirectly, including employment through a successor security contractor, any person who has been employed by Allied Security in a supervisory capacity and assigned to Client's location for a period of one hundred eighty (180) days following the last date of that person's employment with Allied Security at Client's location.

C. **Term**

1. The term of this Agreement shall be for a period of one year beginning on June 24, 2005. This Agreement will automatically continue thereafter on a month to month basis until terminated by either party on thirty (30) days prior written notice at the rates set forth in Addendum A.

2. This Agreement may be terminated by either party for non-performance of a material term of the agreement by the other party upon five (5) days prior written notice to the non-performing party. The non-performing party shall have the opportunity to cure the non-performance or deficiency within five (5) days after receipt of such written notice by the non-performing party.

3. Either party shall have the right to immediately terminate this Agreement if the other party: 1) shall apply for or consent to or have imposed upon it the appointment of a receiver, custodian, trustee or liquidator of itself or of all or a substantial part of its property; 2) make a general assignment for the benefit of creditors; 3) commence a voluntary case under the Federal Bankruptcy Code; 4) file a petition seeking to take advantage of any other law providing for the relief of debtors; 5) fail to controvert in a timely manner, or acquiesce in writing to, any petition filed against it in any involuntary case under the Federal Bankruptcy Code; or 6) acknowledge in writing its inability to make payment as required under this Agreement.

D. **Billing**

1. Allied Security will advance invoice Client monthly for all hours scheduled for the subsequent month and any associated costs. A discount of 1% will be provided for payment received on or before the 8th day of the month in which services are to be provided. To the extent that payment is not received on or before the 8th day of the month, no discount will be provided and payment is due 15 days from invoice date. Allied Security will provide a monthly reconciliation invoice that is due 15 days from invoice date. Any credit forthcoming as a result of such reconciliation will be applied in a manner to be determined by Client

2. The billing rates set forth in Addendum "A" attached hereto (hereinafter "Billing Rates") are valid for the first 12 months in which this agreement is in effect. The Billing rates will thereafter be increased annually in an amount not to exceed 3%. The Billing Rates do not include any planned or unplanned increase in Federal, State or Local payroll taxes, levies or withholdings or in state or federal minimum wage rates. Should an increase occur in any such tax, levy or withholding, or in state or federal minimum wage rates, which necessitates an increase in the wage rate paid to Allied Security personnel assigned to Client's location, Client agrees that Allied Security will pass the cost of the increase(s) through to Client as an increase in the Billing Rates set forth in Addendum "A" at the same mark up rate therein provided. Additionally, the Billing Rates do not include the costs of any Federal, State or Local regulations requiring inoculations and/or medical testing (e.g., HIV, Hepatitis B, etc.) for Allied Security employees, or any similar tests done at the request of Client. Any such additional costs shall be detailed on Addendum "A."

3. Client agrees to pay Allied Security one percent (1%) per month interest or such maximum amount as permitted by law, whichever is less, on any invoice not paid within thirty (30) days of invoice date. In the event that legal action is required to collect on any past-due invoiced amount owed to Allied Security by Client under this Agreement, Client agrees to pay to Allied Security the costs and reasonable attorney fees incurred in such action.

-3-

    4.    In the event that Client requests additional services beyond that listed on Addendum "A," 48 hours notice should be given. In the event that less than 48 hours notice is given, such services will be billed at the billable overtime rate. If the request for additional services exceeds 5% of the base contract hours, then the additional services shall be billed at the billable overtime rate regardless of the amount of notice given. The Billable overtime rates for such additional services will continue to apply until the contract is amended in writing to provide for the increase in base hours, or for (30) days, whichever is sooner.

E.    **Property**

    1.    Client recognizes and acknowledges that in performing its duties under this Agreement, Allied Security installs and utilizes proprietary software (hereinafter "Proprietary Software"), a valuable, special and unique asset of Allied Security and/or third parties. This Proprietary Software is and will remain the sole and exclusive property of Allied Security and/or those applicable third parties.

    2.    Furthermore, any other property, equipment or supplies furnished by Allied Security to its personnel in performance of the services described in this Agreement shall remain the property of Allied Security and shall return to Allied Security at the expiration or termination of this Agreement.

    3.    Upon expiration or early termination of this agreement, in the event that Allied Security has installed proprietary software on hardware owned by Client, Allied Security shall remove the proprietary software without damage to any hardware or software owned by Client and shall be obligated for all costs and expenses to restore or replace Client's hardware or software damaged as a result of the installation and use of the proprietary software.

F.    **Insurance and Indemnification**

    1.    Allied Security shall maintain and provide, at its expense, appropriate Workers' Compensation coverage for its security officers and personnel assigned to Client's location at limits imposed by statute, to include Employer Liability coverage.

    2.    Allied Security shall maintain for its own protection and use various other policies of insurance including Comprehensive General Liability coverage for its performance of security officer services at Client's location, among others.

    3.    Additionally, Allied Security shall maintain Automobile Liability insurance to cover its employee's operation of its owned, leased and non-owned vehicles. However, to the extent that Client requires Allied Security officers and personnel to drive Client's vehicles in performance of the services described in this Agreement, Client agrees to carry Automobile Liability insurance for those vehicles with bodily injury and property damage limits of One

Million Dollars ($1,000,000.00) aggregate. Such insurance will be primary for any loss or damage occurring for Client vehicles operated by Allied Security officers or personnel in performance of the services being provided under this Agreement.

4. Client agrees that Allied Security is not an insurer of Client's location. Except as provided elsewhere in this Agreement, Client assumes all risk of loss, physical damage and personal injury at its location or any other property resulting from fire, theft or other casualty, and Client waives any right of recovery and its insurers' right of subrogation against Allied Security for any loss or damage resulting from any such occurrence except in the event such loss or damage is caused by (i) breach of this Agreement or (ii) the negligent act or omission of Allied Security or its employees.

5. Allied Security shall protect, defend, hold harmless and indemnify Client, its respective successors and assigns, and its directors, officers and employees from and against all claims, actions, liabilities, damages, losses, costs and expenses (including reasonable attorney's fees) arising out of or as a direct result of the performance of the services being provided by Allied Security pursuant to this Agreement, provided that any such claims, actions, liabilities, damages, losses, costs or expenses (1) result in bodily injury, sickness, disease or death or in damage to tangible property and (2) are caused by the failure of Allied Security to perform the services being provided pursuant to this Agreement or are caused by the negligent performance of Allied Security or its employees, or through the willful misconduct or unlawful activity of Allied Security or its employees.

6. Client shall protect, defend, hold harmless and indemnify Allied Security, its respective successors and assigns, and its directors, officers and employees from and against all claims, actions, liabilities, damages, losses, costs and expenses (including reasonable attorney's fees) asserted against Allied Security by reason of or as a direct result of incidents or occurrences taking place or arising at Client's location, provided that any such claims, actions, liabilities, damages, losses, costs or expenses (1) result in bodily injury, sickness, disease or death or in damage to tangible property and (2) are caused by the failure of Client to perform the services set forth in this Agreement or are caused by the negligence, willful misconduct or unlawful activity of Client.

7. Except as otherwise provided Allied Security and Client hereby waive all rights of subrogation against each other to the extent of any insurance coverage obtained pursuant to this Agreement, except such rights as the parties may have to the proceeds of such insurance coverage. If any of the policies of insurance require an endorsement to affect this waiver of subrogation, the owners of such policies shall cause them to be so endorsed.

-5-

*Allied Security*
*Service Agreement*

G. **Miscellaneous**

1. This Agreement represents the entire agreement and understanding of the parties concerning the subject matter herein and replaces any and all previous agreements, understandings, representations, discussions or offers. No modification to this Agreement shall be effective unless reduced to writing and executed by both parties.

2. A written waiver by either party of any of the terms or conditions of this Agreement at any time shall not be deemed or construed to be a waiver of such term or condition for the future or of any subsequent breach of the Agreement.

3. This Agreement is entered into solely for the mutual benefit of the parties hereto and no benefits, rights, duties or obligations are intended or created by this Agreement as to any third parties.

4. The parties each warrant and represent that each respectively is qualified to do business in the State of New Jersey and has the right to enter into this Agreement and to perform its respective duties and obligations of this Agreement and that the execution, delivery and performance of this Agreement do not, and will not, require the consent of a third party or violate the terms of any agreement to which such party is bound. Each party further warrants and represents that this Agreement has been executed by its duly authorized officer.

5. This Agreement and all matters or issues collateral hereto shall be governed by the laws of the State of New Jersey. The parties hereto agree to be subject to personal jurisdiction of the State of New Jersey Superior Court or the United States District Court, District of New Jersey.

6. If any of the terms or provisions of this Agreement are ruled to be invalid or inoperative, all the remaining terms and provisions shall remain in full force and effect.

7. This Agreement may be executed in one or more counterparts, each of which shall constitute one and the same Agreement.

8 Allied Security shall not be responsible for additional expenses and costs incurred by it to provide services pursuant to this Agreement as a result of the following circumstances: strikes, riots, revolutions, wars, military actions, fires, floods, natural disasters, accidents, insurrections, lockouts or other acts of God, perils of the sea, stoppage of labor, or other events considered as "Force Majeure," or by any other unavoidable cause beyond Allied Security's reasonable control. All such additional expenses shall be the responsibility of Client as an additional charge invoiced and paid by Client as it is incurred, pursuant to the terms of the Billing section set forth above. Additionally, to the extent that Allied Security

is unable to perform, or is delayed in performing, the services set forth in this Agreement, such nonperformance or delayed performance is not a breach of this Agreement nor cause for termination of this Agreement.

The parties hereto, intending to be legally bound hereby, enter into this Agreement as of the day and year first written above.

**ALLIED SECURITY LLC**                          Client

                                                 Saint Peter's College

By: _[signature]_                                By: _[signature]_
Print Name  GARY P. HAWKETT                      Print Name  JOHN R. OESTER
Title  VICE PRESIDENT, OPERATIONS                Title  Vice President of Finance and Business
Date  05/09/05                                   Date  5/9/05

-7-

Allied Security
Service Agreement

# Addendum "A"

**Location:**  Saint Peter's College
2641 Kennedy Boulevard
Jersey City, New Jersey 07306

**Contact:**  John R. Oester
Vice President of Finance and Business
Saint Peter's College
2641 Kennedy Boulevard
Jersey City, New Jersey 07306
( 201) 915 - 9020

**Contract Start Date:**  June 24, 2005

**Scheduled hours per week:**  1,402 HPW

**Cost of Service:**

| Position | HPW | Wage Rate | Bill Rate | OT/Holiday Rate |
|---|---|---|---|---|
| Director of Security | 40 | $25.00 | $35.00 | |
| Assistant Director | 40 | $18.00 | $25.56 | |
| Admin. Assistant | 40 | $11.00 | $15.62 | $23.43 |
| Supervisors | 88 | $11.00 | $15.62 | $23.43 |
| Saint Peter Hall Security Office | 248 | $ 8.50 | $12.07 | $18.11 |
| Bike Patrol Exterior | 168 | $ 8.50 | $12.07 | $18.11 |
| Roving Patrol | 56 | $ 8.50 | $12.07 | $18.11 |
| Evening Patrol | 56 | $ 8.50 | $12.07 | $18.11 |
| Night Patrol | 56 | $ 8.50 | $12.07 | $18.11 |
| Building Patrol (32 weeks) | 80 | $ 8.50 | $12.07 | $18.11 |
| Armory Lot (32 weeks) | 80 | $ 8.50 | $12.07 | $18.11 |
| Armory Shuttle (32 weeks) | 50 | $ 8.50 | $12.07 | $18.11 |

-8-

*Allied Security*
*Service Agreement*

| | | | | |
|---|---|---|---|---|
| JSQ Shuttle (32 weeks) | 8 | $ 8.50 | $12.07 | $18.11 |
| Millennium Hall (36 weeks) | 98 | $ 8.50 | $12.07 | $18.11 |
| Saint Peter Hall (36 weeks) | 98 | $ 8.50 | $12.07 | $18.11 |
| Veterans Memorial Court (36 weeks) | 98 | $ 8.50 | $12.07 | $18.11 |
| Whelan Hall (36 weeks) | 98 | $ 8.50 | $12.07 | $18.11 |

Direct Bill Backs (annually):   JCPD Detail - $ 65,000.00
                                Special Event Coverage - $13,459.00

**Estimated Annual Cost: $951,263.47**

**Scope of Service:**
- Security officer is to perform assigned duties according to the Site Operations Manual, which will be defined at a later date.
- Our Standard Bill Rate includes: Security Officer Basic Training (1 day Course), 8 Hours of On-the-Job Training and 4 hours of Annual Refresher Training. Any Additional Training required can be billed back directly as an additional expense.
- Any unusual incidents detected or reported will be reported to Client. An incident report will be filled out and a copy will be forwarded to Client.
- The security officer will also report any out-of-the-ordinary observation to Client.
- Any overtime that is requested by Client with less than 48 hours notice will be billed at 1.5 times the respective billing rates. All security officers working on the below listed holidays will receive 1.5 times their straight-time hourly rates. These holidays will be billed as incurred at 1.5 times the applicable billing rate only for the employees who work during the holiday. The holidays are as follows:

| | |
|---|---|
| New Years Eve (6Pm- 12Am) | Labor Day |
| New Years Day | Thanksgiving |
| Memorial Day | Christmas Eve (6Pm –12Am) |
| July 4th | Christmas Day |
| Martin Luther King Day | |

# AlliedBartonBarton Security Services
## Saint Peter's College Proposed Transition Plan







# AlliedBartonBarton Security Services
## Saint Peter's College Proposed Transition Plan

# AlliedBartonBarton Security Services
## Saint Peter's College Proposed Transition Plan



Weekly Friday Progress meetings will be scheduled for the first 60 days after start date. Bi-weekly meetings will continue for the next 30 days. Other meetings will be scheduled as needed. Quarterly performance review and quality assurance meetings will be scheduled with Saint Peter's College Management Group commencing in September 2005. These meeting will include review and update of training, operations, human resources and administration issues. Form and content of review documentation to be agreed upon no later than June 23, 2005.

Tentative Quarterly review dates: September 27, 2005; December 28, 2005; March 28, 2006; June 27, 2006



**Vice President, Business Development**
Marc A. Burns
**Vice President, General Manager**
Frank Consoli
**Vice President, Operations**
Gary Hawkett
**Business Development Manager**
Bret Clauss
**District Manager**
Peter Digemma

**Director of Public Safety**
TBD
**Human Resources Manager**
Tracie Vincent
**Recruiting**
Scott Grove
**Trainer New Jersey**
Jose Diaz

**Vice President, Finance**
John Oester
**AlliedBarton's New Associate Direc**
Gregory Burns
**Additional Team Member to be det**

## ADDENDUM B

*Approved* [signature] 7/24/06

| Location: | Saint Peter's College<br>2641 Kennedy Boulevard<br>Jersey City, New Jersey 07306 |
|---|---|
| Contact: | Carmine Meluso<br>Interim Vice President of Finance and Business<br>2641 Kennedy Boulevard<br>Jersey City, New Jersey 07306<br>(201) 915-9020 |

Re: Addendum B to "Security Officer Service Agreement" effective as of June 24th, 2005 (the "Agreement") by and between Allied Security LLC dba AlliedBarton Security Services and Saint Peter's College (hereinafter "Client")

This Addendum B confirms the agreement to modify the Agreement from for an additional 1-year term with the following bill rate increase (3.00%) as outlined below effective July 14th, 2006.

Renewal Date: 07/14/2006

Scheduled hours per week: 1,402.00 HPW

| Position | Hours Per Week (HPW) | Bill Rate | OT/Holiday Rate | Annual Cost |
|---|---|---|---|---|
| Director of Security | 40.00 | $36.05 | N/A | $74,984.00 |
| Assistant Director | 40.00 | $26.33 | N/A | $54,766.40 |
| Administrative Assistant | 40.00 | $16.09 | $24.14 | $33,467.20 |
| Supervisors | 88.00 | $16.09 | $24.14 | $73,627.84 |
| Saint Peter Hall Security Office | 248.00 | $12.43 | $18.65 | $160,297.28 |
| Bike Patrol Exterior | 168.00 | $12.43 | $18.65 | $108,588.48 |
| Roving Patrol | 56.00 | $12.43 | $18.65 | $36,196.16 |
| Evening Patrol | 56.00 | $12.43 | $18.65 | $36,196.16 |
| Night Patrol | 56.00 | $12.43 | $18.65 | $36,196.16 |
| Building Patrol (32 weeks) | 80.00 | $12.43 | $18.65 | $31,820.80 |
| Armory Lot (32 Weeks) | 80.00 | $12.43 | $18.65 | $31,820.80 |
| Armory Shuttle (32 Weeks) | 50.00 | $12.43 | $18.65 | $19,888.00 |
| JSQ Shuttle (32 Weeks) | 8.00 | $12.43 | $18.65 | $3,182.08 |
| Millennium Hall (36 Weeks) | 98.00 | $12.43 | $18.65 | $43,853.04 |
| Saint Peter Hall (36 Weeks) | 98.00 | $12.43 | $18.65 | $43,853.04 |
| Veterans Memorial Court (36 Weeks) | 98.00 | $12.43 | $18.65 | $43,853.04 |
| Whelan Hall (36 Weeks) | 98.00 | $12.43 | $18.65 | $43,853.04 |
| **TOTALS** | **1,402.00 HPW** | | | **$876,443.52** |

Note: Annual Estimate does not reflect any holiday or overtime premiums.

Direct Bill Backs (annually):    Special Event Coverage: $13,862.77

Estimated Annual Cost: $890,306.29